**PUBLISH**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Criminal Case No.10-cr-000164-REB-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2. SILVESTRE MAYORQUI RIVERA,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR COURT
ORDER REQUIRING BOP TO PERMIT JOINT MEETINGS WITH
CO-DEFENDANTS RIVERA AND SANTIAGO AND TO CEASE
INTERFERING WITH MR. RIVERA'S RIGHT TO PRESENT A DEFENSE**

---

**Blackburn, J.**

The matter before me is **Defendant Rivera's Motion for Court Order Requiring BOP To Permit Joint Meetings With Co-Defendants Rivera and Santiago and To Cease Interfering With Mr. Rivera's Right To Present a Defense** [#991],[1] filed February 5, 2015. The government filed a response [#999], defendant filed his reply [#1014 ], and the government was permitted to submit a surreply [#1019]. I heard the motion on March 10, 2015. Additionally, during the hearing counsel for Mr. Rivera was afforded the opportunity to make an *ex parte* proffer in support of the motion. Having considered the parties' written and oral arguments and

---

[1] "[#991]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

the *ex parte* proffer, I deny the motion.

In his motion, Mr. Rivera requests that I order the Bureau of Prisons to allow him to meet jointly with his co-defendant, Richard Santiago, who is representing himself *pro se* in this matter. Mr. Rivera claims that without such a face-to-face meeting, he will be deprived of his right to present a complete defense. For purposes of resolving this motion only, the court has agreed to assume that all facts argued in Mr. Rivera's written submissions are true and accurate.[2] In addition, the court has considered defense counsel's oral *ex parte* proffer in which he described why he believes joint visits are indispensable to facilitate Mr. Rivera's anticipated defense at trial.

Mr. Rivera's motion invokes the Fifth Amendment right to a fair trial and the concomitant Sixth Amendment right to present witnesses in one's own defense:

> A criminal defendant's right to present a defense is essential to a fair trial. The Fifth . . . and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses. The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause,"establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." Likewise, "[t]he necessary ingredients of the [Fifth and] Fourteenth Amendment[s'] guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony[.]"

***United States v. Serrano***, 406 F.3d 1208, 1214-15 (10th Cir.), **cert. denied**, 126 S.Ct. 277 (2005) (internal citations omitted; alterations in original). Mr. Rivera alleges that the

---

[2] At the outset of the hearing, I advised counsel that I was crediting Mr. Rivera with the facts averred in his motion and his reply; thus, obviating the necessity for further evidence.

BOP's, and thus the government's, refusal to allow a joint, face-to-face meeting between him and Mr. Santiago violates these principles by substantially interfering with a potential defense witness's decision to testify.  *Id.* at 1215-16.

I disagree.  Mr. Rivera invokes his Fifth and Sixth Amendment rights at the broadest possible level of generality, but cites no legal authority suggesting that these rights compel the specific and extraordinary relief requested here.  The Fifth and Sixth Amendment rights on which Mr. Rivera relies are quintessentially *trial* rights, and he cites no authority for his novel suggestion that they extend to create a constitutional *pretrial* right to fully investigate a case.  Additionally, and most relevantly, he offers absolutely no authority in support of the creation of the extraordinary constitutional right to a tête-à-tête witness interview involving the defendant and the putative witness.

Moreover, even in proper context, Mr. Rivera has not shown that the government is "substantially interfering" with his right to present a defense by refusing to allow him to meet face-to-face with Mr. Santiago.  There is no evidence here that any government actor has "actively discourage[d] [Mr. Santiago] from testifying through threats of prosecution, intimidation, or coercive badgering."  *Id.* at 1216.³  To the contrary, the Bureau of Prisons has attempted reasonably to accommodate interaction between Mr. Rivera and Mr. Santiago short of direct, face-to-face contact between them.  Indeed, counsel for Mr. Rivera acknowledged at the hearing that he had met "extensively" with Mr. Santiago on his own.  Although Mr. Rivera claims these interactions have not been

---

³ In *Serrano*, the district court appointed counsel for two putative defense witnesses, who after consultation both invoked their Fifth Amendment privilege against self-incrimination and did not testify on the defendant's behalf.  *Serrano*, 460 F.3d at 1213-14.  The court found that in so doing, the government had not substantially interfered with the defendant's right to present a defense.  *Id.* at 1216.

3

totally satisfactory, he can only speculate that a direct, personal, face-to-face meeting would produce at trial the testimony deemed critical by the defense.  Even if it did, neither counsel's nor Mr. Santiago's preferences are sufficient to create a constitutional right to the relief sought here. The opportunity afforded by the BOP to Mr. Rivera via his counsel to interview Mr. Santiago passes the apposite constitutional test.[4]

Even if Mr. Rivera could show that a constitutional right was implicated on the facts of this case, however, he fails to acknowledge that the right to present a defense is not wholly unqualified:

> It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor.  But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests.  The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Taylor v. Illinois*, 484 U.S. 400, 414-15, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988). One such countervailing interest is the Bureau of Prisons' mandate to preserve order and safety of the prisons which it operates.  Even when a prison regulation impinges on an inmate's constitutional rights, it will be upheld "if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 US. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).  Four relevant considerations inform this determination:

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest

---

[4] Moreover, conspicuously absent is any suggestion that the right of Mr. Rivera to attempt to produce the testimony of Mr. Santiago at trial has been effectively nullified.

4

>
> put forward to justify it";
>
> (2) "whether there are alternative means of exercising the right that remain open to prison inmates";
>
> (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and
>
> (4) "the absence of ready alternatives."

*Id.*, 107 S.Ct. at 2262.  Application of this deferential standard ensures that "prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations."  *Id.* at 2261 (citation and internal quotation marks omitted).[5]

Having considered the cogent analysis of these factors presented in the government's response to the motion, and being apprised of the factual averments in the declaration of Associate Warden Stephen D. Julian appended thereto, I fully concur with the government's analysis of the *Turner* factors, and therefore approve and adopt that rationale.  On balance, consideration of these quadripartite factors constrains me to conclude that the BOP's decision to keep Mr. Rivera and Mr. Santiago separate is legitimately related to valid penological concerns focusing rationally on institutional operations and staff and inmate security.

Nor has Mr. Rivera shown that the BOP's concerns are "irrational."  *See Kay v. Bemis*, 500 F.3d 1214, 1218 n.2 (10th Cir. 2007).  He suggests that the BOP's stated concerns for safety and security are "overblown" and "hyperbolic" because Mr. Rivera and Mr. Santiago have been together on numerous occasions in the past without

---

[5] I hasten to add that I have neither the training nor inclination to dictate the operation of any BOP prison, *a fortiori*, ADX.

incident. It is a logical fallacy to suggest that simply because something has not happened in the past, it will not happen in the future. This is *a fortiori* given the imminency of trial; it would be foolhardy blithely to assume that past is prologue. Thus, I am not as sanguine as Mr. Rivera that a direct meeting between him and Mr. Santiago will be an entirely benign interaction, and the BOP certainly is not required to naively drop its guard to indulge the assumption that everything will work out for the best. In any event, the constant concern for the security of the facility and the safety of its staff and inmates is larger than Mr. Rivera and Mr. Santiago – who are only two of many at ADX.[6]

For these reasons, I find and conclude that Mr. Rivera's request that I direct the BOP to permit him to meet jointly, face-to-face with Mr. Santiago must be denied.[7]

**THEREFORE, IT IS ORDERED** that **Defendant Rivera's Motion for Court Order Requiring BOP To Permit Joint Meetings With Co-Defendants Rivera and Santiago and To Cease Interfering With Mr. Rivera's Right To Present a Defense** [#991], filed February 5, 2015, is **DENIED**.

Dated March 17, 2015, at Denver, Colorado.

        **BY THE COURT:**

        */s/ Bob Blackburn*
        Robert E. Blackburn
        United States District Judge

---

[6] It is easy to predict that carving out an exception for Mr. Rivera or Mr. Santiago would have significant precedential implications for other inmates and their counsel to the likely detriment of institutional security.

[7] The issue may now be moot given that it appears that Mr. Rivera and Mr. Santiago may no longer be housed in the same BOP prison.