**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No: 10-cr-00164-REB-02

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

**2. SILVESTRE MAYORQUI RIVERA,**

      **Defendant.**

---

**GOVERNMENT'S TRIAL BRIEF**

---

The United States of America, by United States Attorney John F. Walsh, and through Assistant United States Attorneys M.J. Menendez and Valeria Spencer, submits this trial brief in an effort to apprise the Court of certain legal issues that are likely to arise during trial.

    I.    AIDING AND ABETTING

In Count 2 of the superseding indictment, Defendants Rivera and Santiago are charged with Murder in the First Degree, 18 U.S.C. § 1111(a), for the killing of Manuel Torrez. They are additionally charged with "intentionally aid[ing] and abet[ting] each other in the commission of the offense" under 18 U.S.C. § 2(a), which reads: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

The Tenth Circuit has held that, "[f]or an aiding and abetting conviction, the Government must prove that the defendant (1) willfully associated himself with the criminal venture and (2) sought to make the venture succeed through some action of his

own." *United States v. Rosalez*, 711 F.3d 1194, 1205 (10th Cir. 2013) (internal quotation marks and brackets omitted), *cert. denied sub nom. Hernandez v. United States*, 134 S. Ct. 240 (2013), *and cert. denied*, 134 S. Ct. 336, *and cert. denied sub nom. Ruelas v. United States*, 134 S. Ct. 1275 (2014). "There must be 'some showing of intent to further the criminal venture.'" *Id.* (quoting *United States v. Delgado–Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004)). However, the government need not prove beyond a reasonable doubt that a defendant charged with aiding and abetting "intended to bring about **the result** committed by the other principals." *Rosalez*, 711 F.3d at 1205 (emphasis in original) (internal quotation marks omitted). Moreover, "the specific intent requirement necessary to impose aiding and abetting liability is satisfied if the defendant participated in the crime 'reasonably expecting' that it would bring about the death of the victim." *Id.*; *see also United States v. Woody*, 250 F. App'x 867, 878 (10th Cir. 2007) (unpublished) ("[T]he government was required to prove [the defendant] participated in the assault and battery of [the victim] intending (or reasonably expecting) it would bring about his death.").

    A.    In the instant case, the government anticipates that Defendant Rivera will attempt to argue that even if he possessed the intent to assault Mr. Torrez, he did not possess the specific intent to murder Mr. Torrez. The government believes that the evidence will show that Defendant Rivera did possess the intent to murder before the assault began or, at the very least, that he formed the intent sometime during the assault. (The *mens rea* required under the murder statute will be discussed more fully in the second section below.) Even if the government were not able to prove that Mr. Rivera specifically intended to murder Mr. Torrez, however, the government believes

the evidence will show indisputably that Mr. Rivera should have "reasonably expected" his actions to result in the death of Mr. Torrez. Thus, he possessed the specific intent necessary for aiding and abetting liability.

The government intends to present videos of the incident at trial that show Defendants Rivera and Santiago hitting, kicking, and stomping on the head and torso of a helpless Mr. Torrez for two minutes during the initial attack. The videos will further show that after a two minute break, both defendants returned to kick what appears to be a lifeless body for another twenty to thirty seconds. The government's expert, forensic pathologist Dr. Bux, will testify that after watching the videos—in conjunction with the critical injuries to Mr. Torrez he observed first-hand during the autopsy—he is convinced that Mr. Torrez could not have survived the initial attack.

In *Spears v. Mullins*, the Tenth Circuit cited the Oklahoma Court of Criminal Appeals holding that "where the victim was a target of a sustained and relentless attack, and the victim received multiple injuries, circumstantial evidence was sufficient to prove that the defendant, at some point during the attack, formed the intent to kill the victim." 343 F.3d 1215, 1239-40 (10th Cir. 2003) (citing *Hooks v. State*, 862 P.2d 1273, 1280 (Okla. Crim. App. 1993)). That is exactly what happened here. The government believes that even if Mr. Rivera did not initially possess the intent to murder (which the government does not concede), he certainly must have formed it after two minutes of brutally and relentlessly beating a helpless Mr. Torrez. Mr. Rivera's intent to kill is especially clear in light of the fact that he and Defendant Santiago came back two minutes after the initial beating to deliver even more blows to Mr. Torrez's apparently lifeless corpse. The government thus believes that the evidence will support a

conviction of Mr. Rivera for First Degree Murder.  At the very least, even if Mr. Rivera somehow never formed the intent to murder Mr. Torrez, he should have reasonably expected Mr. Torrez to die after he and Defendant Santiago stomped on his head and body for a sustained two minutes.  As stated above, such a finding would alone establish aiding and abetting liability for Mr. Rivera, which would call for a conviction of Second Degree Murder.

      B.      The government also anticipates that Mr. Rivera will attempt to argue he is not culpable for the death of Mr. Torrez because he believes his co-defendant Santiago delivered the fatal blow.  There is a video that shows Defendant Santiago returning three minutes after the second attack to kick and stomp Mr. Torrez's motionless head and body eight more times.  The government believes that the evidence will clearly show that Mr. Torrez was killed by the initial, two-minute attack.  Considering the more than three minutes' worth of hits, kicks, and stomps dealt to Mr. Torrez, it will likely be impossible to decide if a single blow in particular was ultimately the fatal one.  But even if it were possible to determine which defendant actually struck the fatal blow, the *Spears* court found this particular question to be irrelevant.  "Spears anticipated and participated in a sustained attack against a helpless victim, who did not provoke the fatal attack. Spears [and his co-defendants] repeatedly jumped on and kicked Thompson's head and body for at least three minutes, leaving Thompson's body next to the road at the cemetery." *Spears*, 343 F.3d at 1239.  In fact, the Tenth Circuit chose to quote, ostensibly with approval, the Oklahoma Court of Criminal Appeals holding that "it is irrelevant that the defendant may not have actually struck the fatal blow. His voluntary participation and cooperation in the attack established his guilt as an equally culpable

principal." *Id.* (quoting *Spears v. State*, 900 P.2d 431, 439 (Okla. Crim. App. 1995) (internal quotation marks and brackets omitted)).  Once again, the government believes the evidence will demonstrate that Mr. Rivera possessed the requisite *mens rea* to be convicted of First Degree Murder.  And at minimum, the evidence will show that Mr. Rivera aided and abetted the other principal, Defendant Santiago, in killing Mr. Torrez, and that he should have reasonably expected his actions to result in Mr. Torrez's death.

    II.        PREMEDITATION, DELIBERATION AND MALICE AFORETHOUGHT

The federal First Degree Murder statute includes the terms "premeditated," "deliberate," and "malice aforethought" in its language.  *See* 18 U.S.C. § 1111(a).

    A.        The government anticipates that Mr. Rivera may argue that when his co-defendant Santiago began the first attack, Mr. Rivera did not have enough time to form "malice aforethought," or to premeditate or deliberate regarding the actions that ultimately led to the death of Mr. Torrez.  He may argue that he, more or less, simply reacted.  The government believes that the evidence will demonstrate Mr. Rivera did in fact possess the requisite malice aforethought before the attack began; and it will demonstrate that he premeditated the death of Mr. Torrez and deliberated before acting. For example, video evidence will show that Defendants Rivera and Santiago were communicating with each other through Mr. Rivera's cell window immediately before Mr. Rivera was brought to the recreation yard.  After Mr. Rivera arrived on the yard, the evidence will show that the defendants continued to communicate and interact with each other, almost exclusively, preceding the attack.  The video evidence will further show that, moments before the attack, the two defendants positioned themselves in a way calculated to prevent any escape by Mr. Torrez.  Finally, it will show that the

defendants inched closer to Mr. Torrez, in concert, seconds before Mr. Santiago initiated the attack—and that Mr. Rivera joined the attack immediately, without hesitation.

      B.      However, even in the event that the jury does not find that Mr. Rivera possessed the requisite *mens rea* for First Degree Murder *before* Defendant Santiago began the attack, it has long been settled in the Tenth Circuit that the length of time it takes to form the necessary state of mind is immaterial. "The fact that cruelty or brutality is manifested in the killing will raise an inference of malice. The length of time of premeditation is not material, and the circumstances of the act committed by the [defendant] show premeditation." *Evans v. United States*, 122 F.2d 461, 466 (10th Cir. 1941); *see also United States v. Treas-Wilson*, 3 F.3d 1406, 1409 (10th Cir. 1993) ("The government may prove premeditation by circumstantial evidence, and need not show that the defendant deliberated for any length of time.") (internal quotation marks and citations omitted). Moreover, the *Treas-Wilson* court also held that "[i]t is clear that a killer can develop premeditation during the incident at issue." *Id.* (citing *Thomerson v. Lockhart*, 835 F.2d 1257, 1259 (8th Cir.1987), a case in which an angry beating became a calculated and deliberate murder.).

      In *Thomerson*, a man returned home to find his girlfriend being unfaithful. 835 F.2d 1257, 1258. He began beating her with his fists and did not stop until she stopped moving. The defendant argued that he had acted impulsively and that the prosecution presented no evidence to show premeditation and deliberation. *Id.* at 1259. After reviewing the following facts, the jury disagreed:

> The coroner testified the victim's entire body was severely beaten. The victim suffered repeated, severe blows to her head and neck. Her arms showed

>   multiple hemorrhages. Further, her torso and legs were covered with bruises, blisters, and abrasions.

*Id.* The *Thomerson* court (reviewing the district court's denial of the appellant's writ of habeas corpus) concluded that "a rational jury could infer that sometime during his assault Thomerson did premeditate and deliberate the murder." *Id.* The court further noted that even though a jury could have found the killing was done solely in anger, the court could not interfere with the findings of the trier of fact even if it disagreed:

>   [W]hen the evidence is viewed in the light most favorable to the prosecution a rational trier of fact could find the necessary elements, here premeditation and deliberation, beyond a reasonable doubt.

*Id.*

Again, even if it is found that Mr. Rivera did not possess the requisite intent for First Degree Murder before the attack began, he could certainly be found to have developed it during over two minutes of brutally beating Mr. Torrez. In other words, even if Mr. Rivera began the attack only intending to severely beat Mr. Torrez, that intent was transformed with each successive blow that ensured Mr. Torrez would never recover. At some point during the attacks, Mr. Rivera's intent became murderous, his actions malicious, premeditated, and deliberate.

### III.   INTERVENING EVENTS

The government further anticipates that the defendant will argue that he should be relieved of some or all criminal liability because of the Bureau of Prisons' (BOP) alleged negligence regarding the response to the assault at issue. Mr. Rivera may argue that the BOP was negligent in a number of ways, *e.g.*, staff members were not actively monitoring video screens that showed the assault occurring; per BOP policy, no staff member was present in the Observation Area (a/k/a "Shark Cage") during the

assault; the response team was initially sent to the incorrect recreation yard; and the response team did not immediately "flood" the yard upon their arrival. Mr. Rivera will likely argue that these, and possibly other, factors all led to a significant delay of medical treatment for Mr. Torrez.

  A. As noted above, the government believes the evidence will show that Mr. Torrez was killed by the initial two-minute assault by Defendants Rivera and Santiago, and no amount of immediate medical care could have revived him. The evidence will further show that it would have been physically impossible for BOP personnel to reach the defendants within those two minutes even if the staff in the Video Monitoring Room had immediately sounded the alarm when the attack began, and even if the response team had initially been sent to the correct recreation yard. Further, BOP witnesses will discuss BOP's sound safety policy that required a 3 to 1 personnel-to-inmate ratio before *any* staff member could enter an unsecured area during a violent incident. The evidence will also show that even if a policy requiring a staff member to be in the Observation Area during group recreation had been in effect, that staff member would not have been allowed, per the safety policy discussed above, to enter the yard in an attempt to stop the attack. There will also be testimony which establishes that no amount of yelling or verbal threats from BOP personnel will stop this sort of attack by inmates once it has begun.

  B. Assuming, *arguendo*, that one or all of the factors listed above did delay BOP from timely providing medical treatment to Mr. Torrez, and further assuming that such medical treatment could have saved Mr. Torrez's life, it is irrelevant as a matter of law. The Tenth Circuit has held:

> In cases involving death from injuries inflicted in an assault, courts have uniformly held that the person who inflicted the injury will be liable for the death despite the failure of third persons to save the victim.

*United States v. Swallow*, 109 F.3d 656, 660 (10th Cir. 1997) (internal quotation marks and brackets omitted) (quoting *Kusmider v. State*, 688 P.2d 957, 959 (Alaska Ct. App. 1984).

The Second Circuit has explained the reasoning behind courts' uniform holdings on this issue:

> In many situations giving rise to criminal liability, the death or injury is not directly caused by the acts of the defendant but rather results from intervening forces or events, such as negligent medical treatment, escape attempts, or the negligent or intentional acts of a third party. Where such intervening events are foreseeable and naturally result from a perpetrator's criminal conduct, the law considers the chain of legal causation unbroken and holds the perpetrator criminally responsible for the resulting harm.

*United States v. Guillette*, 547 F.2d 743, 749 (2d Cir. 1976). In other words, when a person commits criminal conduct, such as a violent physical assault, it is foreseeable that negligent medical treatment may follow. Likewise, in a prison setting, it is foreseeable that negligence may occur when prison personnel respond to a violent physical assault. Because such intervening events were foreseeable and naturally resulted from the defendants' criminal conduct, Mr. Rivera cannot be relieved of any criminal responsibility.

Finally, the Eleventh Circuit makes this point with even stronger language:

> Generally, one may be held criminally liable for a victim's death even where medical negligence or mistreatment also contributed to the victim's death. In order to be entitled to a defense, there must have been gross medical negligence *and such gross negligence must have been "the sole cause of the victim's death."*

9

*United States v. Rodriguez*, 279 F.3d 947, 951 (11th Cir. 2002) (emphasis added; internal citations omitted).  Thus, even if the BOP's response to the assault was grossly negligent—which the government disputes—that gross negligence would have to be found as the *sole* cause of Mr. Torrez's death for Mr. Rivera to be relieved of any criminal liability.  Mr. Rivera could not avoid any criminal liability even if BOP's alleged gross negligence were found to have been a substantial factor leading to Mr. Torrez's death.  Given the clear video footage of both defendants relentlessly hitting, kicking, and stomping on the head and torso of Mr. Torrez, it would be inconceivable that any jury could conclude that any gross negligence by the BOP was the one and only cause of Mr. Torrez's death.  Therefore, Mr. Rivera should not be relieved of any criminal responsibility for his actions due to any negligent action, inaction, or delay by the BOP on the day of the incident in question.  As any testimony regarding inaction or delay by the BOP on April 21, 2005 is irrelevant, the government will object to Defendant Rivera's attempts to elicit such testimony.

IV.   ADMISSIBILITY OF CRIME SCENE AND AUTOPSY PHOTOGRAPHS

The government intends to offer a number of crime scene and autopsy photographs that graphically depict Victim Manuel "Tati" Torrez's severe injuries.  Each photograph offered for admission has independent probative value that will assist lay and expert witnesses to explain the material aspects of the evidence.  The government will rely on the following authority to support its tender of the crime scene and autopsy photographs:

A.   *United States v. Soundingsides*, 820 F.2d 1232 (10th Cir. 1987).  *Soundingside*s involved a jury verdict conviction on a second degree murder

10

perpetrated against a young Arapahoe Indian woman in Wyoming.  His Honor Judge Clarence Brimmer presided over the trial and allowed the admission of "undeniably gruesome" autopsy photographs that painted a clearer picture of the victim's injuries, the cause of her death, and the defendant's malice aforethought.   The opinion includes the following language: "The admission of photos in a homicide case is a matter within the sound discretion of the trial court."  *Id.* at 1242-43 (citing *United States v. Cline*, 570 F.2d 731, 734 (8th Cir. 1978)).  "We will not disturb the trial court's decision to admit or reject the photographs and slides into evidence in the absence of 'a clear showing of abuse of discretion.'"  *Id.* at 1243 (citing *United States v. Whitfield*, 715 F.2d 145, 147 (4th Cir. 1983)).

      B.    *United States v. Smith*, 776 F.2d 892 (10th Cir. 1985).  *Smith* involved the prosecution of Defendant Smith for involuntary manslaughter in an alcohol-related driving event.  Defendant Smith alleged that the trial court abused its discretion in admitting three photographs of her vehicle after it hit the victim, and of the victim lying in the roadway.  Defendant Smith argued that her admission that the victim died as a result of injuries sustained in the accident made the trial court's decision to allow the photographs particularly abusive of its discretion.  The Tenth Circuit held:

> Again, we see no reason to disturb the exercise of the court's discretion in this matter.  The court examined four photographs objected to and excluded two of them.  The other two were admitted because of their probative value in depicting the accident scene, including paint markers used as reference points.  The photograph of the car was admitted because of its probative value as to point of impact.

*Id.* at 898 (internal citations omitted).

      C.    *United States v. Naranjo*, 710 F.2d 1465 (10th Cir. 1983).  *Naranjo* involved a second degree murder prosecution out of the District of Colorado.  The

Honorable Judge Fred Winner presided over the trial.  Defendant Naranjo's second point of appeal, upon conviction, charged error in the admission of a color photograph of the victim's head and torso as she appeared when first responders arrived.  The photograph was also used in connection with the pathologist's identification of the deceased, his testimony concerning the autopsy he performed, and his findings as to the manner in which the wound caused death.  The Tenth Circuit's findings that the trial court had not abused its discretion in admitting the photograph included extensive colloquy on the admissibility of graphic photographs.  The opinion states:

> The photograph is of course disturbing, as would be expected in any case in which the victim was shot in the face.  But gruesomeness alone does not make photographs inadmissible.  *United States v. Hoog*, 504 F.2d 45, 50 (8th Cir. 1974), *cert. denied*, 420 U.S. 961 (1975).  Exhibit 11 went to the *corpus delicti*, and was taken with many other photographs showing the particulars of the crime scene.  In our court system, juries are entrusted with the weighty obligation to find the facts in criminal cases of grave importance, such as the one before us.  We think it is incompatible with that degree of trust to attempt to "protect" them from the evidence questioned here. . . .
>
>     . . . .
>
> "Relevant evidence is inherently prejudicial, but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.  Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.  Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.  As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance.  It is not designed to permit the court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.  Here was no parade of horrors.  We refuse to interfere with the trial court's exercise of its discretion." (Emphasis in original).

*Id.* at 1469-70 (second paragraph quoting *United States v. McRae*, 593 F.2d 700 (5th Cir.), *cert. denied*, 444 U.S. 862 (1979)).

D.  *United States v. Lujan*, 603 F.3d 850 (10th Cir. 2010).  *Lujan* involved a capital murder prosecution due to kidnapping resulting in the death of the victim.  In *Lujan*, the government sought to introduce graphic evidence that the defendant committed additional homicides, including evidence that a bloody rag matched Defendant Lujan's DNA and testimony and evidence from the medical examiner as to the wounds and manner of the victims' deaths.  Although the opinion relates to the sentencing phase of a capital case, the Tenth Circuit's dicta concerning the admission of graphic evidence is applicable to the case at bar.  The opinion states:

> The risk that introducing graphic evidence of brutal murders will give rise to emotional reactions poses a legitimate risk of unfair prejudice; however, the vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts. In the guilt phase of a trial, courts have not allowed defendants to benefit from a Rule 403 exclusion for unfair prejudice simply because their conduct was of a grisly nature.

*Id.* at 858.

E.  *United States v. Butters*, 2010 WL 3258325 (D. Kan. Aug. 16, 2010).  In a discussion as to the admissibility of photographs, Senior Judge Wesley Brown discussed "unfair prejudice" in the context of Federal Rule of Evidence 403.  The opinion states:  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged."  *Id.* at *2 (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Respectfully submitted this 30th day of March, 2015.

                  JOHN W. WALSH
                  United States Attorney

BY:   *s/ Valeria Spencer*
        Valeria Spencer
        *s/ M.J. Menendez*
        M.J. Menendez
        Assistant U.S. Attorneys
        United States Attorney's Office
        District of Colorado
        1225 17th Street, Suite 700
        Denver, CO 80202
        (303) 454-0100   Phone
        (303) 454-0406   Fax
        E-mail: Valeria.Spencer@usdoj.gov
                MJ.Menendez@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2015, I electronically filed the foregoing **GOVERNMENT'S TRIAL BRIEF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- David Arthur Lane
  dlane@kln-law.com,jakard@kln-law.com
- Kathryn J. Stimson
  kathryn@stimsondefense.com,helene@hkeinvestigations.com

                                       s/Valeria Spencer
                                       VALERIA SPENCER
                                       U.S. Attorney's Office
                                       1225 Seventeenth Street, Suite 700
                                       Denver, Colorado 80202
                                       Telephone: (303) 454-0100
                                       Fax:   (303) 454-0406
                                       E-mail: valeria.spencer@usdoj.gov